MICROUTSICOS *v.* UNITED STATES (No. 596).[1]

PAPPERIOS SEED PACKED IN BRINE, PICKLES.

Seed pods of the papperios plant may not be deemed vegetables, but when packed in brine, in view of the marked change indicated by a comparison of the phraseology of paragraphs 252 and 253, tariff act of 1909, and the old law, they must be taken to be pickles, and are dutiable as such under paragraph 253 at 40 per cent ad valorem.

United States Court of Customs Appeals, November 28, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24628 (T. D. 31236).
[Affirmed.]

*Hatch & Clute (Edward S. Hatch* and *Walter J. Welch* of counsel) for appellant.
*Wm. K. Payne,* Deputy Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellant imported into this country a consignment of merchandise which was invoiced as twelve barrels of peppers in brine.

---

[1] Reported in T. D. 32078 (21 Treas. Dec., 672).

The collector classified the importation as prepared vegetables dutiable at 40 per cent ad valorem within the provisions of paragraph 252 of that act.

The importer protested, contending, among several alternative classifications, that the articles in question should be free of duty as fruits in brine under paragraph 571, or dutiable at 2 cents per pound as prepared edible fruits under paragraph 274, or dutiable at 20 per cent ad valorem as a nonenumerated manufactured article under paragraph 480.

This protest was heard upon evidence by the Board of General Appraisers, and was overruled. In its decision the board expressed the opinion that even if the importations were not properly classifiable as vegetables under paragraph 252, they would nevertheless be subject to an equal rate of duty as pickles under paragraph 253 of the same act.

The importer now prays this court for a reversal of the board's decision.

The pertinent parts of the several paragraphs above referred to read as follows:

252. Vegetables * * * if pickled, or packed in salt, brine, oil, or prepared in any way, * * * forty per centum ad valorem.

253. Pickles * * * forty per centum ad valorem.

274. * * * All edible fruits * * * prepared in any manner * * * two cents per pound.

480. That there shall be levied, collected, and paid on the importation of all * * * articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

571. * * * Fruits in brine (free).

The first inquiry which presents itself is whether the articles in question are either prepared vegetables or pickles; for if they are either they are dutiable at 40 per cent ad valorem, which is the rate of duty assessed by the collector.

As has been stated, the importation was invoiced as peppers in brine. These peppers are the annual seed pods of the papperios plant, which grows in Greece, from which country the present shipment was made. The papperios, as the name indicates, is a pepper plant; it is of perennial growth and attains at times to a height of 6 or 7 feet; it has a woody stem and may be called a bush, or shrub, or a stunted tree. The pods are cut from the plant with a part of the soft, woody stem attached to them; they have a pungent taste and are eaten raw as a relish. Those which are not thus immediately consumed are packed in brine and eaten at meals as an appetizer, very much as olives are eaten. They are never cooked.

The pods are slender and very much resemble common string beans in size and shape. This resemblance is so patent that it immediately suggests their classification as vegetables.

However, the following well-known definition of vegetables should be consulted before acting upon this resemblance alone:

But in the common language of the people, whether sellers or consumers of provisions, all these are vegetables which are grown in kitchen gardens, and which, whether eaten cooked or raw, are, like potatoes, beets, cauliflower, cabbage, celery, and lettuce, usually served at dinner in, with, or after the soup, fish, or meats which constitute the principal part of the repast, and not, like fruits, generally as a dessert. Nix v. Hedden (149 U. S., 304–307).

This definition certainly excludes the articles at bar from its terms, notwithstanding their appearance. For these articles are not herbs of annual growth like those named as illustrations in the foregoing definition, but are the product of a perennial plant; nor are they eaten as articles of substantial food, as are those named in the quotation, but as a mere relish preceding or during the meal to stimulate the appetite for substantial food; and they are certainly not grown in the kitchen garden, but are rather the product of an orchard.

Therefore within the authoritative definition above cited the articles in question can not be classified as vegetables.

The question whether the articles at bar are pickles or not next comes up for decision.

It is of course a matter of common knowledge that almost all pickles are composed of vegetables. This fact likewise appears in the definitions of the dictionaries. The following definition is taken from Murray's New English Dictionary:

Pickles, n.—2. Some article of food preserved in pickle; usually (pl.) vegetables (as cabbage, cauliflower, onions, cucumbers, walnuts, mangoes, etc.) pickled and eaten as a relish.

In those tariff acts which preceded the present one it seems to have been assumed that all pickles were made from vegetables, although this was placing a restriction upon the word which was hardly justified by common usage. In schedule G of the tariff act of 1883 the subject was covered by a provision for "vegetables, in their natural state, or in salt or brine;" in the act of 1890 paragraph 287 provided for "vegetables of all kinds, prepared or preserved, including pickles and sauces of all kinds;" in the act of 1894 paragraph 198 covered "beans, peas, mushrooms, and other vegetables, prepared or preserved, in tins, jars, bottles, or otherwise, and pickles and sauces of all kinds;" in the act of 1897 paragraph 241 named "all vegetables, prepared or preserved, including pickles and sauces of all kinds."

In none of these acts were pickles given an independent classification, but in each of them they were treated as a subdivision of vegetables. This construction was followed by the judicial decisions upon the subject. In the case of Acker v. United States (T. D. 28423), the Circuit Court, Southern District of New York, held that

pickled walnuts were not within the classification of pickles as established by paragraph 241 of the act of 1897, because they were not vegetables. Platt, Judge, in deciding the case said: "In order to be dutiable under the provisions of paragraph 241, the article to be assessed must be a vegetable." This decision stood at appeal at the time of the enactment of the act of 1909, but it was afterwards affirmed by the Circuit Court of Appeals, on the opinion of Judge Platt. (171 Fed. Rep., 77.)

However, in the act of 1909, under which the present importation was entered, a change appeared in the language of the enactment relating to vegetables and pickles. The following is a full copy of the corresponding paragraphs of the acts of 1897 and 1909 relating to this subject:

Act of 1897:

241. Beans, pease, and mushrooms, prepared or preserved, in tins, jars, bottles, or similar packages, two and one-half cents per pound, including the weight of all tins, jars, and other immediate coverings; all vegetables, prepared or preserved, including pickles and sauces of all kinds, not specially provided for in this act, and fish paste or sauce, forty per centum ad valorem.

Act of 1909:

252. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for in this section, and bean stick or bean cake, miso, and similar products, forty per centum ad valorem.

253. Pickles, including pickled nuts, sauces of all kinds, not specially provided for in this section, and fish paste or sauce, forty per centum ad valorem.

It will be observed that the changed language of the act of 1909 in relation to this subject is something more than a mere rearrangement of words in the interest of order or form of expression. To the contrary the change is material and goes to the substance of the classification. Whereas under the act of 1897, as well as the preceding ones, pickles had been directly classified as a kind or product of vegetables, now, after a period of litigation concerning the few kinds of nonvegetable pickles, the controlling enactment is changed so as to remove pickles from the vegetables paragraph and make them a class of themselves. This seems to express a legislative intent to use the word in the sense of its common acceptation. As stated in the above definition, pickles are generally composed of vegetables, but in a few instances might be nuts or like products. In this view the amended classification would make the preparation, characteristics, and use of the articles the determinative factors as to whether they were pickles, and would not arbitrarily limit the class to vegetable products only. It is well known that the word pickles in its ordinary meaning includes some few nuts and like articles which lend themselves readily to such preparation and use.

The appellant, however, calls attention to the fact that the present paragraph contains the terms "pickles, including pickled nuts," and contends that the foregoing construction is not consistent with this phraseology. Appellant argues that if the word "pickles" *ex proprio vigore* includes pickled nuts, it is unnecessary to follow that word with the provision "including pickled nuts," and that the presence of that phrase in the paragraph implies that without its use pickled nuts are not included within the classification. From this appellant contends that the word has been again used in its former restricted meaning. This argument is certainly a very reasonable one. However, it must be remembered that at the time of the preparation of the tariff act of 1909 the litigation concerning pickled nuts was pending in the courts, and it may well be concluded that the express mention of them in paragraph 253 was made out of an abundance of caution even to the extent of tautology. The presence of the phrase, "including pickled nuts," in the paragraph, does not therefore show that the word pickles had been used in its former restricted meaning but rather that two methods of enlarging the application of the word had been adopted, one by changing the general construction of the applicable provisions and the other by adding the quoted phrase so as expressly to cover that subject of litigation which was then before the courts and therefore distinctly within the legislative atten- tion. According to this view, the word pickles as used in paragraph 253 of the present act includes such articles as these at bar.

It is contended by appellant that the articles at bar are certainly fruits in brine, and that they should therefore be so classified, even if they are also pickles, upon the ground that the first designation is more specific than the latter. Appellant says in that behalf that all fruits in brine may be pickles in the broad sense of that term, and even meats and fish in brine, but that all pickles are not fruits in brine. Hence "fruits in brine" is more specific than "pickles."

In answer to this it may be said that neither class is properly a species of the other nor is either so treated in the act. The class "fruits in brine" does not include the class "pickles" as a species, because most pickles are not fruits at all; and conversely the class "pickles" does not include the class "fruits in brine," as a species, because most fruits in brine are not pickles at all. Therefore the contention that one class is more specific than the other does not seem to afford a safe foundation upon which to predicate a decision of the issue. Nor does the act bring the articles into such a correlation as to justify such a finding.

It therefore appears that the articles in question were dutiable as pickles at 40 per cent ad valorem, which is the rate assessed by the collector and approved by the board, and the board's decision in that behalf is *affirmed*.